FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 10, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JOSEPH S.,[1]

                    Plaintiff,

          v.

CAROLYN COLVIN, Acting
Commissioner of Social Security,[2]

                    Defendant.

No.    2:24-cv-00201-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR AWARD OF BENEFITS**

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] Carolyn Colvin became the Acting Commissioner of Social Security on November 30, 2024. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, and section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), she is hereby substituted for Martin O'Malley as the defendant.

Due to type 1 diabetes, peripheral neuropathy, congenital loss of one kidney, liver disease, Alagille syndrome, bilateral cataracts, carpal tunnel syndrome, migraine headaches, nodular prurigo, adjustment disorder, depressive disorder, and PTSD, Plaintiff Joseph S. claims that he is unable to work fulltime and applied for disability insurance benefits. He appeals the denial of benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ erred at step two in failing to find migraine headaches and carpal tunnel syndrome a severe condition; improperly analyzed the opinions of the examining medical source, Dr. Maria Cuenca; improperly assessed Plaintiff's credibility; and erred in evaluating the listings. As is explained below, the ALJ erred. This matter is remanded for an award of benefits.

## I.    Background

In August 2019, Plaintiff filed an application for benefits under Title 2, claiming disability beginning July 2, 2012, based on the physical and mental impairments noted above.[3]  The claim was denied at the initial and reconsideration levels.[4] After the agency denied Plaintiff benefits, ALJ Jesse Shumway held a telephone hearing in September 2020, at which Plaintiff appeared with his

---

[3] AR 153-160, 178.

[4] AR 92, 96.

representative.[5]  Plaintiff and a vocational expert testified.[6] After the hearing, ALJ Shumway issued a decision denying benefits.[7] Plaintiff requested review but the Appeals Council denied the request.[8] Plaintiff filed suit in this Court and on July 20, 2022, this Court remanded the case back to the Commissioner for further proceedings.[9]

Pursuant to the District Court Order, the Appeals Council remanded the case for further proceedings.[10] On April 10, 2024, Plaintiff appeared with his attorney before ALJ Shumway for a second hearing.[11]  Plaintiff was the only individual called to testify at the second hearing.[12] After the second hearing, ALJ Shumway issued a second decision denying benefits.[13]

---

[5] AR 36-66.

[6] *Id.*

[7] AR 17-35.

[8] AR 1-6.

[9] AR 1555-1576, 1582.

[10] AR 1577-1581.

[11] AR 1500-1526.

[12] *Id.*

[13] AR 1472-1499.

[14] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[15] As to medical opinions, the ALJ found:

- The opinions of state agency evaluators Matthew Comrie, PsyD, and John Gilbert, PhD, that there was insufficient evidence to evaluate Plaintiff's mental impairments to be not persuasive.

- The opinions of state agency evaluators Kathleen Tucker, MD, and Howard Platter, MD, to be generally persuasive.

- The February 2021 opinions of treating source Maria Cuenco, MD, to be neither persuasive nor valuable.

- The April 2023 opinions of treating source Maria Cuenco, MD, to be neither valuable nor persuasive.

- The opinions of Catherine Armstead, PhD, to be unpersuasive.[16]

The ALJ also found the third-party statement of Plaintiff's spouse to be unconvincing.[17] As to the sequential disability analysis, the ALJ found:

---

[14] AR 15-38.  Per 20 C.F.R. § 404.1520(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[15] AR 1483-1487.

[16] AR 1487-1490.

[17] AR 1490

- Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2017.

- Step one: Plaintiff had not engaged in substantial gainful activity between his alleged onset date of July 2, 2012, and his date last insured of December 31, 2017.

- Step two: Plaintiff had the following medically determinable severe impairments: Alagille Syndrome, diabetes with peripheral neuropathy, nodular prurigo, adjustment disorder, depressive disorder, and PTSD.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments, and specified that she considered Listing 5.01, 8.01, 8.04, and 11.14.

- RFC:  Plaintiff had the RFC to perform light work with the following exceptions:

  he can stand and walk 4 hours total in combination in an 8-hour workday; he is limited to simple, routine tasks; he can have no contact with the public and only occasional, superficial contact with coworkers and supervisors; he can have no exposure to crowds; he needs a routine, predictable work environment with no more than occasional changes; he can occasionally climb ladders, ropes, and scaffolds; he can frequently balance and climb ramps and stairs; he cannot have concentrated exposure to extreme cold, extreme heat, vibration, or hazards (e.g., unprotected heights, moving mechanical parts).

- Step four: Plaintiff is unable to perform his past relevant work as an electronics mechanic.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a deliverer, outside (DOT 230.663-010); office helper (DOT 239.567-010); and router (DOT 222.587-038).[18]

Plaintiff timely requested review by this Court.[19]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[20] and such error impacted the non-disability determination.[21] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[22]

---

[18] AR 1478-1492.

[19] ECF No. 1.

[20] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[21] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 404.1520(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[22] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The

# III.    Analysis

Plaintiff seeks relief from the denial of disability on three grounds. He argues the ALJ erred when evaluating the medical opinions, erred at Step Two by failing to find that Plaintiff's psoriatic arthritis was a severe impairment, and erred when evaluating Plaintiff's subjective complaints.  As is explained below, the Court concludes that the ALJ erred in his evaluation of the medical opinion evidence and failed to adequately articulate his reasoning that Plaintiff's psoriatic arthritis was not a severe impairment and that the ALJ's analysis as to each contains consequential error.

## A.    Step Two (Severe Impairment): Plaintiff establishes consequential error.

Plaintiff argues that the ALJ erred at step two by failing to find his headaches and carpal tunnel syndrome to be severe impairments.  The Commissioner argues that the ALJ properly considered the conditions and found they caused no more than mild limitations and argues further that Plaintiff made his argument by citing to isolated evidence in the record regarding his arm and

_____

court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

headache complaints. The Court disagrees with the Commissioner and finds that the ALJ committed consequential error.

1.  Standard

At step two of the sequential process, the ALJ determines whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities.[23] This involves a two-step process: 1) determining whether the claimant has a medically determinable impairment and 2), if so, determining whether the impairment is severe.[24]

Neither a claimant's statement of symptoms, nor a diagnosis, nor a medical opinion sufficiently establishes the existence of an impairment.[25] Rather, "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source."[26] Evidence obtained from the "application of a medically acceptable clinical diagnostic technique, such as evidence of reduced joint motion, muscle spasm, sensory deficits, or motor disruption" is considered objective medical evidence.[27] If the objective medical signs and laboratory findings

---

[23] 20 C.F.R. § 416.920(c).

[24] *Id.* § 416.920(a)(4)(ii).

[25] *Id.* § 416.921.

[26] *Id.*

[27] 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019). *See also* 20 C.F.R. § 416.913(a)(1).

demonstrate the claimant has a medically determinable impairment,[28] the ALJ must then determine whether that impairment is severe.[29]

The severity determination is discussed in terms of what is *not* severe.[30] A medically determinable impairment is not severe if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."[31] Because step two is simply to screen out weak claims,[32] "[g]reat care should be exercised in applying the not severe impairment concept."[33]

2.    The ALJ's Findings

When considering impairments at step two, the ALJ articulated the following reasoning to support his finding that headaches were not a severe impairment:

> The claimant's headaches are not a severe impairment. While the claimant reported frequent headaches that required multiple hours of

---

[28] "Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [a claimant's] statements (symptoms)." 20 C.F.R. § 416.902(l).

[29] *See* Soc. Sec. Ruling (SSR) 85-28 at *3 (1985).

[30] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

[31] *Id.*; *see* SSR 85-28 at *3.

[32] *Smolen*, 80 F.3d at 1290.

[33] SSR 85-28 at *4.

rest to recover from, the record does not support this frequency and severity. While the claimant was treated for headaches with naproxen, propranolol, and sumatriptan (15F/309, 312), he generally denied active headache on exam during the relevant period. 15F/366, 590, 826. He was consistently alert and oriented on exam. 1F/30, 32, 35, 38, 46, 50, 54, 2F/3, 11, 13,15, 17, 19, 21, 23, 29; 15F/332, 357, 394, 507, 524, 542, 611; 19F/9. Generally, no problems with balance were observed. 15F/299, 356, 419, 525, 585. The record does not establish that the claimant's headaches occurred with such frequency, duration, and intensity that they more than minimally impacted the claimant's ability to perform basic work activities.[34]

3.    Relevant Medical Records

Veterans Benefits Administration records indicate that Plaintiff suffered multiple mild concussions while deployed, and subsequently developed symptoms of irritability, memory issues, and difficulty concentrating, as well as multifactorial headaches associated with light-sensitivity and hearing loss.[35] Plaintiff had fallen at night and hit his head on a rock with loss of consciousness, and later suffered headaches, and two months later a mortar struck close to him and he was knocked unconscious.[36] After the second incident, he had issues with concentration and ringing in his ears.[37] On November 2, 2016, Plaintiff presented to the Mann-Grandstaff VA Hospital complaining of "a massive headache" which was daily or every other day for the last 2 weeks, with dizziness, tinnitus, and decreased

---

[34] AR 1478.

[35] AR 2967.

[36] AR 2506.

[37] Id.

concentration.[38] Plaintiff reported that after he returned home from deployment his headaches worsened.[39] It was noted that following his concussions those around him noticed that he was more agitated, more skittish, and could not remember as much.[40] Plaintiff was diagnosed with multifactorial headaches, light sensitivity, and hearing loss.[41]

On February 17, 2017, Plaintiff again presented with migraine-like headaches and doctors questioned the etiology of the headaches, but suggested they were tension related.[42] On June 21, 2017, Plaintiff returned with complaints of migraine-like headaches, light sensitivity, nausea, and pressure.[43] Dr. Cuenco diagnosed him with migraine headaches and noted that over the counter medications such as naproxen and Excedrin did not provide relief and he should start taking Propranolol and Sumatriptan.[44] On September 25, 2017, Plaintiff was seen for follow-up and complained that he continued to wake up with throbbing bi-frontal headaches with photophobia, nausea, and pressure and that Propranolol

---

[38] *Id.*

[39] *Id.*

[40] AR 2508.

[41] *Id.*

[42] AR 2488.

[43] AR 2471-2472.

[44] *Id.*

1  and Sumatriptan were not helping.[45] On January 24, 2018, Plaintiff was seen for

2  follow-up and continued to report that Propranolol and Sumatriptan were not

3  relieving symptoms of ear pain, migraine headaches, and tinnitus.[46] Dr. Cuenco

4  added Imitrex and Topamax to Plaintiff's medications.[47] On March 7, 2018,

5  Plaintiff continued to report ineffectiveness of his medications and Imitrex and

6  Topamax were discontinued due to concerns over liver and kidney function.[48]

7  Dr. Cuenco ordered an MRI of the brain.[49] On September 26, 2018, Plaintiff

8  followed-up with Dr. Cuenco for his chronic conditions and noted that acupuncture

9  had been ordered to treat Plaintiff's tension and migraine headaches.[50]

10      4.   <u>Analysis</u>

11      The ALJ articulated three reasons for finding that Plaintiff's migraine

12  headaches were not as severe as alleged: that Plaintiff generally denied headache

13  on examination, that Plaintiff appeared alert and oriented during examination,

---

[45] AR 2451.

[46] AR 2419.

[47] *Id.*

[48] AR 2403.

[49] AR 4399.

[50] AR 2361.

DISPOSITIVE ORDER - 12

and that Plaintiff did not display issues with balance.[51] The Court will address each reason articulated.

Regarding the articulated reasoning that Plaintiff denied migraine during examinations, this is not a good reason. Migraines are suffered intermittently, and while it is uncommon for medical professionals to never examine a patient diagnosed with the disorder at a time when they actively have a headache, it is equally uncommon for them to have an active headache on every examination. Here the ALJ cited to 3 examinations in the record in support of his assertion that Plaintiff denied headaches: 15F/366, 590, and 826 (which correspond to AR 2506, 2730, and 2966).[52]

The record at 15F, page 366 cited to by the ALJ references Plaintiff's November 2, 2016 appointment at Mann-Grandstaff VA Hospital where Plaintiff presented with complaints of "a massive headache" which was daily or every other day for the last 2 weeks, with loss of balance, tinnitus, and decreased concentration.[53] Thus, the record cited by the ALJ does not support that Plaintiff denied headache on examination - he was complaining of that very thing.[54]

---

[51] AR 1478.

[52] *Id.*

[53] *Id.*

[54] AR 2506.

1       The record cited by the ALJ at 15F, page 590 pertains to a medical

2   appointment Plaintiff had at the gastroenterology clinic on May 22, 2013.[55] While

3   the ALJ is correct that Plaintiff denied that he had headaches at this visit, the

4   denial in no way disproves his allegation that he began experiencing migraine

5   headaches in 2016.

6       The last page cited by the ALJ at 15F, page 826 (the actual page the ALJ

7   meant to cite was 825) is simply a duplicate of the treatment note regarding

8   Plaintiff's November 2, 2016 visit to the VA hospital which is cited above.[56] It again

9   proves rather than disproves the allegation of migraine headaches.

10      The second reason cited the ALJ, that Plaintiff was alert and oriented, is

11  also flawed.  When a medical note states that a patient is "alert" means that they

12  are actively perceiving the world around them, are conscious, and are responding

13  to stimuli.[57]  When a medical note states a patient was "oriented" it means that the

14  person is fully aware of their own identity, the place they are at and the date and

15  time.[58]  The fact that a person suffered a migraine headache would not be expected

---

[55] AR 2729-2730.

[56] AR 2965.

[57] Merck Manual, _How to Assess Mental Status - Neurologic Disorders - Merck Manual Professional Edition (merckmanuals.com)_(last viewed November 4, 2024).

[58] _What Does Oriented x1, x2, x3 and x4 Mean in Dementia?_ (verywellhealth.com) (last viewed November 4, 2024.)

DISPOSITIVE ORDER - 14

to render them unconscious or unaware of themselves or their surroundings and this reason cannot be considered a "good reason" to find that migraine headaches was not a severe impairment.

The last reason given by the ALJ is flawed as well. The ALJ's assertion that a claimant must establish loss of balance to establish migraines as a severe impairment has no basis in fact. Migraine headaches are characterized as those that are accompanied by "aura," and those that are not. Migraines with aura are migraines accompanied by visual and perceptive disturbances.[59] Migraines without aura occur with pain but without visual or perceptual disturbance but are like migraines with aura in all other ways and like those with aura have three phases: a premonitory phase, headache phase, and postdrome phase.[60] Thus, even if Plaintiff had not been noted to have dizziness with migraine, which he was,[61] it would have made no difference because not all migraine headaches are accompanied by dizziness and loss of balance and requiring Plaintiff to establish loss of balance was error on the ALJ's part.

---

[59] Mayo Clinic - *Migraine with aura - Symptoms & causes* - Mayo Clinic. www.mayoclinic.com.

[60] American Migraine Foundation. - *Migraine Without Aura |* www.AmericanMigraineFoundation.org. (last viewed November 4, 2024).

[61] AR 2506.

Although step-two errors are often harmless,[62] and the Commissioner argues that any error here was harmless because Plaintiff cites to no reliable evidence that Plaintiff had limitations not addressed by the ALJ, the record does not support that conclusion.  Here, the ALJ's step-two error was not harmless.  The ALJ did not consider any of the impairments caused by Plaintiff's migraine headaches and associated photophobia during the later sequential steps—or at least did not include such findings, record citations, analysis, or limitation in the formulated RFC regarding exposure to lights, for instance, to allow this Court to determine whether the ALJ considered these impairments and any resulting limitations.[63]

The Court cannot be certain that the step-two error was not prejudicial at the later steps.  This error was consequential, as the ALJ crafted an RFC that did not fully incorporate Plaintiff's reported symptoms and impairments.

---

[62] *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

[63] *See Burch* 400 F.3d at 682 ("Assuming without deciding that this omission constituted legal error [at step two], it could only have prejudiced Burch in step three (listing impairment determination) or step five (RFC) because the other steps, including this one, were resolved in her favor.").

DISPOSITIVE ORDER - 16

**B.      Medical Opinion: Plaintiff establishes consequential error**

Plaintiff argues the ALJ erred in his evaluation of the medical opinions.[64] Specifically, Plaintiff argues that the ALJ erred in finding the opinions of treating source Maria Cuenco, MD, that Plaintiff's liver and kidney function would deteriorate with full-time work and that he would miss four or more days of work a month due to chronic pain and difficulty controlling his blood sugar is an issue reserved to the Commissioner and therefore inherently neither valuable nor persuasive.

1.      <u>Standard</u>

The ALJ was required to consider and evaluate the persuasiveness of the medical opinions and prior administrative medical findings.[65] The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[66] Supportability and consistency

---

[64] An ALJ must consider and articulate how persuasive she found each medical opinion, including whether the medical opinion was consistent with and supported by the record. 20 C.F.R. §§ 404,1520c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[65] 20 C.F.R. § 404.1520c(a), (b).

[66] 20 C.F.R. § 404.1520c(c)(1)–(5).

are the most important factors,[67] and the ALJ must explain how she considered the supportability and consistency factors when reviewing the medical opinions and support her explanation with substantial evidence.[68] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[69]

    2.    Testimony

        a.    *Plaintiff – first hearing*

On September 17, 2020, Plaintiff appeared with his attorney for a hearing before ALJ Jesse Shumway by telephone.[70] Plaintiff testified and a vocational expert testified.[71] When asked what was his primary medical barrier to working, Plaintiff stated that he had neuropathy and numbness in his feet "and

---

[67] *Id.* § 404.1520c(b)(2).

[68] *Id.* § 404.1520c(b)(2); *Woods v. Kijakazi*, 32 F.4th a at 785 ("The agency must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings.") (cleaned up).

[69] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court review is constrained to the reasons the ALJ gave).

[70] AR 36-66.

[71] *Id.*

everything."[72] He said that he has to elevate his feet throughout the day for 15 minutes each hour.[73] The condition started in 2013 and has steadily gotten worse.[74] Plaintiff said that as of 2017 he had to elevate his feet for at least 10 minutes each hour.[75] He believed that his physical problems were more a barrier to work than his mental health.[76]

When asked if he was capable of working from a mental health standpoint, he replied that he was not.[77] He said that he would get massive headaches with blurred vision and inability to focus, two to three times a week and had to lay down for at least half the day.[78] He said that the headaches never went away but he stopped complaining about them because treatment was not working.[79] Plaintiff said that he had been told to stay in a dark room and that he had tried different pills and electrotherapy to alleviate the headaches but it had not worked.[80] He said

---

[72] AR 40.

[73] *Id.*

[74] AR 40-41.

[75] AR 41.

[76] *Id.*

[77] AR 41-42.

[78] AR 42.

[79] *Id.*

[80] *Id.*

1    that he had an adverse reaction to some medications that made him throw-up and

2    that he was presently only taking aspirin and that the dosage had to be monitored

3    due to his kidneys.[81] He said that he saw a neurologist three times in 2016 and was

4    seeing one currently but that it was not the same doctor.[82] He was switched to the

5    present neurologist because the first one left the VA where he is treated.[83] He said

6    that there was no other mental health issue he thought kept him from working.[84]

7        Plaintiff said he was taking classes for two or three years online with

8    University of Phoenix for a two-year associate's degree and completed his class but

9    that he had a lot of help from his ex-wife.[85] He said that he was not taking a full-

10   time course load and that he only took one class at a time.[86] He said that he was

11   having problems with concentration and that he only spent 15 hours a week on

12   classes.[87] Plaintiff said all his healthcare is through the VA and that it is free to

13   him but he can only go when they are available by appointment.[88]

14

15   [81] AR 42-43.

16   [82] AR 43.

17   [83] AR 43-44.

18   [84] AR 44.

19   [85] AR 45.

20   [86] AR 45-46.

21   [87] AR 46.

22   [88] *Id.*

23

DISPOSITIVE ORDER - 20

1

2

3

4

5

6

7

8

9

10

11

12

13

     Plaintiff testified that he still saw a doctor for his liver disease although it cannot be treated, because they run tests such as bloodwork and ultrasound every three months.[89] He has been treated by the same doctor since 2013.[90] He said that he would get fatigue and nausea 3-4 times a day and the nausea would last for 15 minutes but the fatigue lasted 3-4 hours.[91] He would need to sit down and rest.[92] He said he slept for 3-4 hours and some days slept both in the morning and afternoon.[93] He said that his liver condition also caused itchy sores on his body and that in that time period they did not know what caused them.[94] He said the itching was constant and that he scratched so hard he broke the skin and bled.[95] He said the itching was bad enough to affect his ability to concentrate and if he was watching television he would not be able to follow the plot.[96] He said that the episodes lasted about 15 to 30 minutes.[97] He said that he would get about 4

---

14

15

16

17

18

19

20

21

22

23

[89] AR 47.

[90] *Id.*

[91] AR 48.

[92] *Id.*

[93] AR 48-49.

[94] AR 49.

[95] *Id.*

[96] AR 50.

[97] *Id.*

episodes a day and that none of the ointments or creams that his doctors gave him would be able to stop it.[98]

Plaintiff said that when he had fatigue he also had joint pain in his legs and his hands.[99] He said the pain prevented him from using his hands because the pain was very bad and he felt like his hands were locked in place.[100] He said that he would be able to use his hands for about a half hour and that he had to have his wife write or type his schoolwork because he could not do it.[101] He said that he would tell her what to write or type and that she helped him.[102] He said that when he was not able to concentrate he would give his wife an answer but she would have to reword or articulate what he meant.[103] He said at times it was worse than others.[104]

Plaintiff said that his PTSD would also flare up and he would stay in his room for days because he was scared to deal with anyone.[105] Plaintiff's wife had a

---

[98] AR 50-51

[99] AR 51-52.

[100] AR 52.

[101] *Id*.

[102] AR 52-53.

[103] AR 53.

[104] AR 53-54.

[105] AR 54.

DISPOSITIVE ORDER - 22

separate room so he could go to his and be alone and not feel like he was being triggered.[106] He had PTSD from nightmares and things that happened during the day.[107] He said that he had serious flare-ups about 12 to 15 days a month.[108] He said he had issues other days but they were not as severe.[109] Plaintiff said he also noticed that he had more problems with his memory and that his ex-wife had to remind him to take his medication or shower.[110] He said he tried to stay on his feet no more than 45 minutes at a time because he bothered him.[111] He said that he could get up and walk around 2 to 3 times a day.[112] He said that since 2017 his mental conditions had improved but his physical conditions had worsened.[113]

When asked about the job he did when in the military, Plaintiff said that it was presently titled sensitive equipment operator but had been titled computer

---

[106] *Id.*

[107] *Id.*

[108] AR 55.

[109] *Id.*

[110] AR 55-56.

[111] AR 56.

[112] *Id.*

[113] AR 56-57.

DISPOSITIVE ORDER - 23

detection systems repair.[114]He worked in a workshop repairing night vision goggles "and sensitive equipment like that."[115]

      b.    *Plaintiff – second hearing*

On March 20, 2024, Plaintiff appeared with this attorney for a second hearing before ALJ Shumway.[116]Plaintiff was the only witness called to testify at the hearing.[117] Plaintiff said that he was maintaining his diet as recommended for diabetes but that his blood sugars are still uncontrolled.[118] Plaintiff explained that he has chronic issues with his blood sugar rising and falling and that he gets headaches as a result and has to lay down.[119] He said that he gets headaches two or three times a week for up to half a day.[120] He said that his blood sugar fluctuates but is usually low.[121]

---

[114] AR 58.

[115] AR 59.

[116] AR 1500-1526.

[117] *Id*.

[118] AR 1512.

[119] *Id*.

[120] AR 1512-1513.

[121] AR 1513.

1    Plaintiff testified that he is still treated for his blood sugar and his

2   neuropathy with medication but the medication does not help with nerve pain.[122]

3   He said the medication he takes for nerve pain has changed three times in the last

4   ten years and that they've gotten stronger progressively.[123] He said they need to

5   monitor the medication to make sure it doesn't damage his liver and kidney.[124] He

6   said that because of the medication he cannot sleep at night and dozes off during

7   the day two to three times.[125] There is no other treatment that has been offered to

8   him for the neuropathy.[126] He said they monitor his conditions and medications to

9   see that they do not affect his kidney.[127]

10    Plaintiff said he still has itchy skin and they are treating it with cream only

11   because it is not life-threatening and they can't do more.[128] He said that he will get

12   itchy for several hours at a time and it is so annoying that he can't concentrate

13   even enough to watch television.[129] He said that happens about three times a

14   _____

15   [122] *Id.*

16   [123] *Id.*

17   [124] AR 1513-1514.

18   [125] AR 1514.

19   [126] *Id.*

20   [127] AR 1515.

21   [128] *Id.*

22   [129] AR 1516.

23

week.[130]Plaintiff said he still gets headaches but he is not on migraine medication because some of his doctors are not sure they are migraines.[131] He said he gets the headaches when he has nightmares, he has lack of sleep, or his blood sugar is high and they are worst when his blood sugar is high.[132]He said that he will get a headache before his blood sugar goes up.[133] He said that when he said he lays down two times a week because of the blood sugar it is also in part due to the headaches that accompany it.[134]

Plaintiff said he is still on mental health medications for nightmares and that he still has them once or twice a week.[135] He said he will wake up shaking and screaming and his wife tells him that he talks in his sleep.[136] He said that the VA is not offering individual counseling and is offering group therapy but that does not work for him.[137] He said he has asked for counseling and they gave him therapy for

---

[130] AR 1517.

[131] *Id.*

[132] AR 1517-1518.

[133] AR 1518.

[134] *Id.*

[135] AR 1519.

[136] *Id.*

[137] *Id.*

other issues but not PTSD because they offer it only to patients with a high risk of self-harm.[138]

Plaintiff said he dropped out of online school because he cannot concentrate on anything and his wife is not able to complete his work for him any longer.[139] He said that taking a full course load was taking a toll on his mental health and he could not keep doing it.[140] He said he was doing three or four hours of work a day throughout the day.[141] He said he was falling behind in his classes and he was getting more headaches and worsening his PTSD.[142]

Plaintiff said he has nerve pain in his hands in feet; in his forearms, from his wrist to his elbow in both arms; his knee to thigh on the right side; and from his knee to his foot on the left side.[143] He said the intensity and frequency of the pain had gotten progressively worse through the years and since the last hearing.[144] Plaintiff said about 3 times a day his hands will lock up for about 45 minutes and

---

[138] AR 1520.

[139] AR 1521.

[140] *Id*.

[141] AR 1522.

[142] AR 1522-1523.

[143] AR 1523.

[144] AR 1523-1524.

he can't move them.[145] He said this had progressively worsened and that his doctors were planning to do an EMG.[146]

Plaintiff said he has trouble leaving home due to a combination of physical and mental issues and that when he has issues with his blood sugar he will stay home until they normalize.[147]

c.  *Vocational expert*

Vocational expert Sharon Welter (VE) testified at Plaintiff's initial hearing as a vocational expert.[148] She testified that Plaintiff's past work was as an electronics mechanic and that it was medium exertional level with an SVP of 7.[149] The ALJ asked her to consider a hypothetical of a person of Plaintiff's age, education and work history capable of light work with the following exceptions: occasionally climb ladders, ropes and scaffolds; frequently climb ramps and stairs; frequently balance; no concentrated exposure to extreme cold or heat, vibration or hazards; occasional superficial contact with the public; no exposure to crowds; and exposure to no more than moderate noise.[150] The VE said that past work was

---

[145] AR 1524.

[146] *Id.*

[147] AR 1524-1525.

[148] AR 36-66.

[149] AR 59.

[150] AR 60.

precluded but the individual could work in the following positions: small product

assembler; cleaner, housekeeping; and marker.[151]

The VE was asked to consider a hypothetical in which the individual was

further limited to standing and walking for 4 hours a day; performing simple,

routine tasks; no contact with the public and only occasional superficial contact

with coworkers and supervisors and would need a predictable, routine work

environment with no more than occasional changes.[152] The VE testified that the

individual could work as a deliverer, outside; an office helper; and router.[153] The

VE said that her testimony was not inconsistent with the DOT but that she relied

on her experience to consider some elements in the hypothetical not included in the

DOT.[154] She testified that the tolerance for time off task is 10% and the tolerance

for absence is once per month, up to eight per year.[155] When asked if an individual

could maintain employment if they needed to lie down for 3 to 4 hours once week

she said they would not.[156] If the individual could spread the time out they would

---

[151] *Id.*

[152] AR 61.

[153] AR 61-62.

[154] AR 62.

[155] AR 62-63.

[156] AR 63.

remain unemployable.[157] When asked if the person could work if they would need to elevate their legs above chest height for 10 to 15 minutes every hour and a half, she said they would not be able to sustain employment.[158] When asked if the individual could work if they were limited to occasional use of their hands, the VE said that the jobs would be eliminated and that it would be as "huge" barrier to working in any unskilled job.[159] When asked if absence for a half day instead of a full day would have the same effect, the VE testified that it would.[160]

3.    Dr. Cuenco's Opinions

On February 11, 2021, Dr. Cuenco drafted a narrative letter, which stated that she had been Plaintiff's primary care doctor since 2013 and that during her treatment of Plaintiff he has not been employed due to medical issues.[161] She stated that Plaintiff suffered chronic liver and kidney complications due to a genetic disorder Alagille Syndrome and that he needed consistent follow-up medical care.[162]

---

[157] *Id.*

[158] AR 63-64.

[159] AR 64.

[160] *Id.*

[161] AR 2017.

[162] *Id.*

On April 3, 2023, Dr. Cuenco completed a medical report, in which she wrote narrative answers to 16 questions.[163] Dr. Cuenco wrote that she first saw Plaintiff March 22, 2013, and last saw him on March 29, 2023.[164] Dr. Cuenco wrote that Plaintiff suffers from Alagille Syndrome, chronic liver disease, type 1 diabetes, chronic neck and back pain, depression, and chronic kidney disease.[165] She wrote that the significant symptoms were chronic pain and fatigue, inability to gain weight, abnormal liver and kidney function, and blood sugar ranging between hypoglycemia and hyperglycemia.[166] She noted Plaintiff was prescribed insulin, naltrexone, and methocarbamol and had undergone inguinal hernia repair.[167] Dr. Cuenco stated that Plaintiff's insulin caused hypoglycemia and that his chronic depression likely caused pain.[168] Dr. Cuenco opined that working on a regular basis would cause Plaintiff's condition to deteriorate because his liver and kidney function would worsen and increase his risk for glycemia.[169] Dr. Cuenco opined that Plaintiff would miss 4 or more days of work per month due to ongoing chronic

---

[163] AR 3052-3054.

[164] AR 3052.

[165] *Id.*

[166] *Id.*

[167] *Id.*

[168] *Id.*

[169] AR 3052-3053.

pain and difficulty controlling his blood sugar.[170] She noted that she was unable to determine the exertional level Plaintiff would be limited to or time off task because she was not able to perform a functional capacity examination.[171]

4.    Analysis

The ALJ considered both Dr. Cuenco's February 2021 narrative letter and the Medical Report she completed in April 2023. To the extent that the ALJ found Dr. Cuenco's February 2021 opinion that Plaintiff is unable to work to be an issue reserved to the Commissioner, the Court agrees.  The Court disagrees, however, with the Commissioner's assertion that there was no error in the ALJ's consideration of Dr. Cuenco's April 2023 opinion that if working full-time Plaintiff would likely miss 4 days of work each month.

The ALJ articulated his consideration of the opinion as follows:

> In April 2023, Dr. Cuenco completed a form opinion, opining that work on a regular and continuous basis would worsen his liver and kidney function and increase his risk for hypoglycemia, and that the claimant would miss four or more days of work a month due to chronic pain and difficulty controlling his blood sugar. 18F. Dr. Cuenco declined to fill out further information as she was unable to do a functional capacity exam. 18F/3. This is not persuasive. This addresses an issue reserved to the commissioner, and is therefore inherently valuable or persuasive. Additionally, it is not well-supported by citation to the relevant period. It was offered more than five years after the date last insured, weakening its support. the author checked a box asserting that the limitations specified here have been present since 2017, she gave no explanation of how she reached that conclusion, nor is there any indication that she reviewed

_____

[170] AR 3052-34053.

[171] AR 3054.

records from that time period, nor does it seem likely that she did so. Treatment notes during the relevant period do not support her opinion; they document almost entirely normal physical exams and do not document a significant flare/remission pattern that would be expected to cause frequent, episodic absences. The only explanation offered in this form is "chronic pain," a wholly subjective complaint, and "difficult to control blood sugars," which does not provide a convincing basis for inability to show up to work at all. I thus find the opinion poorly supported. I also find it inconsistent with the longitudinal record during the relevant period, including the claimant's mild Alagille syndrome, without loss of liver function (3F/102, 151; 4F/1, 25), normal abdominal exams (1F/13, 23; 15F/423, 428, 834), generally normal gait (1F/17, 23; 2F/7, 9; 15F/328, 332, 357, 368, 387, 404, 439, 531, 542, 570, 583, 827, 857), tandem gait (15F/332, 354, 591, 600, 612, 827), strength (1F/17, 23; 2F/7, 9; 3F/191; 15F/368, 827), sensation (15F/368, 827), balance (15F/299, 356, 419, 525, 585), range of motion (15F/38, 827), and lack of skin infections (3F/176, 181, 183, 189, 192).[172]

The ALJ's statement that Dr. Cuenco addressed an issue reserved to the Commissioner is wrong on its face. A medical opinion is a statement from a qualified medical source about what an individual can do despite their impairments and what limitations their impairment causes in their ability to perform the physical and mental demands of work; their ability to use their senses such as hearing and seeing to perform work; and their ability to adapt to environmental conditions such as extremes of temperature or fumes.[173]

Dr. Cuenco did not make a statement that Plaintiff could not work, and had she done so, that would have been an issue reserved to the Commissioner. Instead,

---

[172] AR 1488-1489.

[173] 20 C.F.R. § 404.1513(a)(2).

Dr. Cuenco's statement that Plaintiff's condition would deteriorate if he worked full-time and he would miss 4 days of a work a month meets the requirements of the regulations to serve as a medical opinion.

The ALJ's reasoning that the opinion was rendered five years and later and that there was no evidence that Dr. Cuenco reviewed Plaintiff's records is flawed because Dr. Cuenco had served as his primary physician since 2013, was involved in his care, and made referrals as necessary for specialists, and all of Plaintiff's treatment by specialists was rendered in the same facility where Dr. Cuenco worked and those notes were available to her as part of her own treatment record.

While the Court agrees with the Commissioner that Dr. Cuenco's explanation that Plaintiff's liver and kidney function would worsen and his blood sugar would be harder to control was somewhat lacking in detail, it was adequately based on this record to provide a basis for her opinion. In support of his finding that Dr. Cuenco's opinion is inconsistent with the longitudinal record the ALJ cited to a record stating that Plaintiff's Alagille Syndrome is mild.[174] The Commissioner cites to the same treatment note in his brief and argues Plaintiff's Alagille syndrome was mild.[175] The note in question contains a statement by Michael Chang, MD, of the Portland Liver Clinic Dr. Cuenco's statement that Plaintiff had

---

[174] *Id.*

[175] ECF. No. 10.

1
2
3
4
5

"mild Alagille syndrome without loss of liver function."[176] But the ALJ and Commissioner have taken Dr. Chang's statement of "mild Alagille syndrome" out of context. Context is crucial as "treatment records must be viewed in light of the overall diagnostic record."[177] The full text of Dr. Chang's statement reads as follows:

6
7
8

> [Plaintiff's] variant of Alagille is exceptionally mild. That said, there is evidence of progressive liver injury from secondary biliary cholangitis. Given the degree of liver injury, [Plaintiff] will surely progress to cirrhosis in the next 5 years. At this time there is no therapy for Alagille's and we can only provide supportive care.[178]

9
10
11
12
13
14
15
16
17

Dr. Chang's statement, read as whole, did not indicate that Plaintiff's condition was mild, but that the variant of Alagille he was diagnosed with was usually a milder variant. When read as a whole, Dr. Chang's findings support Dr. Cuenco's opinion that Plaintiff's liver disease was not mild. Moreover, the record supports Dr. Cuenco's statement that Plaintiff suffered from a severe chronic kidney disease. Initially, the Court notes that it was documented that as a result of Alagille syndrome Plaintiff was born with only one kidney—his right kidney is missing entirely.[179] In itself, that is a significant fact but also, in his left kidney, which is Plaintiff's only kidney, there is evidence of dilation of the portal vein,

18
19
20
21
22
23

---

[176] ECF No. 10, pg. 6, citing to AR 630.

[177] *Ghanim*, 763 F.3d at 1164.

[178] AR 630-631.

[179] AR 2063.

splenic enlargement, and multiple cysts.[180] By November 2021, Plaintiff's chronic kidney disease had significantly worsened and was critical, with him requiring advanced care.[181] In April 2022, lab results indicated that Plaintiff's blood sugar was critically low at 39.[182]

While Dr. Cuenco's reference to Alagille Syndrome as a reason that Plaintiff's blood sugars were uncontrolled was short, it was detailed enough to articulate her reasoning. The ALJ's error in rejecting it was consequential because the expected time to be taken for absences which Dr. Cuenco opined to was in excess of the time which the VE stated would be tolerable to employers.[183]

 5. <u>Summary</u>

Because the ALJ did not give good reasons for his evaluation of the medical opinions of Dr. Cuenco, a remand is warranted.

**C. Plaintiff's Subjective Complaints, Step-Three Evaluation, and Step-Five Findings: The Court finds these issue moot.**

Plaintiff argues the ALJ failed to properly assess his subjective complaints, erred in his step-three evaluation and erred at step five as a result of prior errors. As discussed above, the ALJ failed to consider the medical record as a whole when

---

[180] *Id.*

[181] AR 2057.

[182] AR 2053.

[183] AR 62-63.

considering the medical evidence regarding opinions.  Because the Court has remanded the case for consideration of the record and medical opinions, the ALJ will be required to consider the credibility of Plaintiff's subjective complaints.

**D.    Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[184] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[185]

This matter was previously remanded to the Commissioner, however, to reassess the medical-opinion evidence and Plaintiff's subjective complaints. As is discussed above, the ALJ on remand failed to offer clear reasons to convince the reviewing court that Plaintiff's symptom reports should be discounted and failed to offer valid reasons supported by substantial evidence for finding the treating medical source Dr. Cuenca's medical opinions unpersuasive. When crediting Dr.

---

[184] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[185] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke*  379 F.3d at  595 ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

Cuenca's opinions, Plaintiff is unable to sustain full-time work, as the vocational expert testified that an individual who is off task 10 percent or more, or who misses more than one day of unskilled work per month on a regular basis is unable to sustain work.[186] Further administrative proceedings will offer no benefit to the disability assessment. An award of benefits is warranted.[187]

## IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED to the Commissioner of Social Security for immediate calculation and award of benefits**.

2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 9 and 10**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 10th day of December, 2024.

*Edward F. Shea*

_____

EDWARD F. SHEA
Senior United States District Judge

---

[186] AR 62-63.

[187] *See also Vasquez v. Astrue*, 572 F.3d 586, 593-94 (9th Cir. 2009).